UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 04-10336-NMG<br>REYNALDO RIVERA )<br>      Defendant ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Reynaldo Rivera ("Rivera").[1] On October 19, 2006, Rivera pleaded guilty to conspiracy to distribute heroin (Count One of the Superseding Indictment) and possession with intent to distribute heroin (Counts Two through Six of the Superseding Indictment). There is no plea agreement between the parties.

### INTRODUCTION

*Rivera was the primary long-term customer of Julio Santiago, who was the head of a massive heroin distribution enterprise operating in the Lowell / Fitchburg areas. In fact, the DEA investigation began as a result of citizen complaints about Rivera's and Santiago's drug trafficking in Dracut, which was subsequently confirmed through physical surveillance. Rivera employed two codefendants, Zuleima Reyes and Santiago Arroyo, to act as "runners" in five heroin transactions with an undercover DEA agent. Over the course of the investigation, Rivera ordered approximately 700 grams of heroin from Santiago over various telephones and a pager. At the conclusion of the*

---

[1] As this Court is aware, following a ten-day trial in October 2006, a jury returned guilty verdicts against five of the eleven codefendants in this case --SANTIAGO, Juan NUNEZ, Carlos COLON (a/k/a Pedro MIRANDA), Jose RODRIGUEZ, and Carlos SANCHEZ -- with respect to Count One of the Superseding Indictment. The jury also found Julio Santiago guilty of the firearms offenses set forth in Count Seven, namely, possession of firearms in furtherance of a drug trafficking crime, and possession of unregistered firearms, to wit: silencers, (Count Eight). The jury further found that the conspiracy as a whole was responsible for more than 1,000 grams of heroin. With the exception of Enrique AGOSTO, who was severed from his co-defendants for the purpose of trial, the remaining six codefendants, including RIVERA, have pleaded guilty.

> *investigation on October 15, 2004, agents searched Rivera's residence and discovered 180.7 grams of heroin, a sophisticated "finger" press, latex gloves and fingers, a digital scale, and $3,200 in cash. The evidence adduced at trial established that Rivera received and distributed 10-gram increments of heroin (called "fingers") for profit.*

To determine a defendant's final sentence, this Court must follow the three-step sentencing approach espoused by the First Circuit. United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). First, this Court must calculate the advisory guideline range. E.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Second, the Court must determine whether any traditional departures apply to the case at hand. E.g., United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006). Finally, the Court needs to determine whether any factors put forth in 18 U.S.C. § 3553(a) offer a persuasive reason to impose a sentence outside of the proposed guideline range. E.g., Robinson, 433 F.3d at 35.

## ANALYSIS

According to the Presentence Report (PSR), Rivera is a Criminal History Category I. (PSR ¶¶ 144-146). However, because he is a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive, he is not safety-valve eligible. See U.S.S.G. § 5C1.2(a)(4).[2] If the Court were to accept Probation's attribution of between 700 and 1,000 grams of heroin to Rivera, his Base Level Offense is 30. (PSR ¶¶ 133-134). With a three-level upward adjustment under § 3B1.1 for being a manager of supervisor, and after an offsetting three-point downward adjustment for acceptance of responsibility, Rivera's Total Offense Level is 30 and his GSR is 97 to 121 months. (PSR ¶¶ 136-141, 189). He faces a

---

[2] The defendant in any event has not satisfied criterion 5 of § 5C1.2.

2

mandatory minimum of 5 years' imprisonment and a maximum term of incarceration of up to life. (PSR ¶¶ 189).³ He must pay a $600 special assessment fee. (PSR ¶ 200).

The government recommends a period of 97 months' incarceration to be followed by a term of 4 years' supervised release. The recommended term of incarceration falls within the low-end of the GSR as calculated by Probation and the high-end of the GSR proposed by the government. The government further recommends a fine in the amount of $70,000.00 (which represents a conservative estimate of the value of the heroin attributed to Rivera).

**A      Importance of the Guideline Range.**

Even though the guidelines are advisory, the First Circuit has ruled that the guidelines remain a central component of any sentencing post-Booker. Jiménez-Beltre, 440 F.3d at 518; see also United States v. Kandirakis, No. 04-10372-WGY, 2006 WL 2147610, at *10 (1st Cir. August 1, 2006) (stating "the Guidelines - and their judge-made factual findings - are still the driving force behind federal sentencing"). The First Circuit explained that the "guidelines remained 'an important consideration' because they represented the only 'integration of the multiple factors' identified in the statute, often reflected past practice, and bore the imprimatur of the [Sentencing Commission] expert agency charged with developing them." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006), quoting Jiménez-Beltre, 440 F.3d at 518. The continuing importance of the guidelines is such that the more the judge's sentence differs from the advisory guideline range - either higher or lower - the more compelling the judge's justification must be

---

³If the Court were to accept the government's attribution of between 400 and 700 grams of heroin to Rivera, his Base Level Offense would be 28, his Adjusted Offense Level would be 31 (with 3 points for role in the offense), and his Total Offense Level would be 28 (after a 3-point reduction for acceptance of responsibility). With a Criminal History Category of I, Rivera's GSR would be 78 to 97 months.

for the atypical sentence. See Kandirakis, 2006 WL 2147610, at *11; United States v. Thurston, No. 05-2271, 2006 WL 2065404, at *4 (1st Cir. July 26, 2006); Smith, 445 F.3d at 4.

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Instead, reasonableness is judged in relation to the guidelines for three reasons adopted by the First Circuit in United States v. Jiménez-Beltre: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. See 440 F.3d at 518. Congress explicitly created the Sentencing Commission and guidelines to achieve these ends. Id.

The continued adherence to the now advisory guidelines remains evident in appellate courts across the country. While courts have repeatedly reversed as unreasonable sentences outside the applicable guideline ranges,[4] reversals of sentences imposed within the guideline range have been extraordinarily rare. Kandirakis, 2006 WL 2147610, at *43 n.36; see also United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006) ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable"); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) ("[I]t will be rare for a reviewing court to say [a within-Guidelines sentence] is 'unreasonable.'"). Indeed, in the post-Booker era, only

---

[4]See, e.g, Zapete-Garcia, 447 F.3d at 60 (holding that defendant's forty-eight month sentence – eight times the maximum of the advisory sentencing guideline range – was unreasonable as the district court failed to provide a reason for such a mammoth variance and neither defendant's prior deportations or arrest justified the increase); Smith, 445 F.3d at 5-6 (finding that defendant's forty-six month sentence – less than half the minimum advisory guideline range – for six counts of crack distribution and one count conspiring to sell narcotics was unreasonable as the defendant's minor role was taken into account in the guideline calculation and the defendant had previously sold narcotics near schools, violated post-arrest release terms, and had no better than usual rehabilitation prospects).

one within-guidelines sentence has been found blatantly unreasonable. United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006) (sentence based on comparison to co-defendant's sentence found unreasonable). Furthermore, just two additional sentences have been reversed where the appellate court determined that the district court judge failed to provide an adequate explanation of the within-guidelines sentence. United States v. Carty, 453 F.3d 1214 (9th Cir. 2006); United States v. Vonner, 452 F.3d 560 (6th Cir. 2006). Moreover, the First Circuit and its sister circuits have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.

      Here, the record – in the form of evidence introduced at trial and the reliable information set forth in the PSR – clearly supports the finding that Rivera was responsible for at least 400 to 700 grams of heroin, if not the 700 to 1,000 grams proposed by Probation (PSR ¶ 133). See United States v. Panet-Collazo, 960 F.2d 256 (1st Cir. 1992) ("We review a trial court's findings of fact under the Sentencing Guidelines only for clear error"). Between the sales of heroin and the negotiated 80-gram deal with an undercover agent (PSR ¶¶ 28-31, 37-38), the amounts ordered from Santiago over the telephone, coupled in some instances with corresponding seizures of heroin (PSR ¶¶ 39, 51-56, 64, 71-74, 90), the orders of heroin over Santiago's pager (PSR ¶¶ 101-102), and the seizures of heroin from Rivera's and Reyes's residences (PSR ¶¶ 119, 124), there is sufficient if not overwhelming evidence to support either the government's or Probation's proposed Base Offense Level calculations (PSR ¶¶ 131-134).

      There is also sufficient justification within the record to find that Rivera was a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive. See 3B1.1(b). "A defendant's role in the offense must be established by a

preponderance of the evidence, ... and the sentencing court's factual findings are reviewed only for clear error." United States v. Tuesta-Toro, 29 F.3d 771,777 (1st Cir. 1994); see also United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995)  ("[T]he determination of a defendant's role in an offense is necessarily fact-specific. Appellate courts review such determinations only for clear error. ... Thus, absent a mistake of law, battles over a defendant's status and over the scope of the criminal enterprise will almost always be won or lost in the district court.").

Section 3B1.1(b) provides, "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." Since the language of section 3B1.1(b) is disjunctive, "either extensiveness or numerosity is sufficient for a three or four-level upward adjustment." United States v. Colon-Munoz, 318 F.3d 348, 364 n.9 (1st Cir. 2003); see United States v. Rostoff, 53 F.3d 398, 413 (1st Cir. 1995). A determination that a criminal activity is "extensive" within the meaning of section 3B1.1 derives from "the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity, and duration of the scheme." *United States v. Dietz*, 950 F.2d 50, 53 (1st Cir. 1991). Indeed, Application note 3 to § 3B1.1 provides, "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive."

Here, it would not constitute clear error to find based on the record that this criminal enterprise (1) involved five or more participants, or (2) was "otherwise extensive." The massive heroin distribution scheme involved at least twelve participants, all of whom were named in the

Superseding Indictment.  Rivera himself had direct supervisory authority over two runners, Santiago Arroyo and Zuleima Reyes.[5]  The head of the distribution ring in Massachusetts (and Rivera's primary source of supply), Julio Santiago, made multiple trips to New York to large quantities of heroin per trip from his source of supply, Juan Nunez.  The conspiracy also involved extensive coordination among the participants so that 10-gram quantities of heroin (termed "fingers") could be provided to mid-level suppliers, who in turn would sell the poison to users throughout the Greater Lowell area.  Multiple instances of counter surveillance were detected – with Rivera reporting the stop of Torrado by police on August 26, 2004 (PSR ¶ 73).  There is no question that Rivera was a manager or supervisor within an organization that involved five or more participants or was "otherwise extensive." See United States v. Picanso, 333 F.3d 21, 24-25 (1st Cir. 2003) (trial judge has the advantage over [the appeals court] as to both the raw facts and the 'feel' of the situation in determining role adjustment).  He should accordingly receive a three-level upward adjustment for his role in the offense.

### B. Application of the § 3553(a) Factors.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing.  Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines.  The other 3553(a) factors also point to this conclusion.  While all § 3353(a) factors must be considered by this Court, "it is not required to address those factors, one by one, in some

---

[5] Indeed, the trial testimony of Undercover Agent Marcos Chavez described recorded conversations with Zuleima Reyes, who referred to Rivera as her "boss." See also Trial Exhibit 53, Tab A (Reyes needing to get approval from Rivera to lower the cost of a finger of heroin for Chavez).

sort of rote incantation when explicating its sentencing decision." Dixon, 449 F.3d at 205; see also United States v. Navedo-Concepcion, 450 F.3d 54, 57-58 (1st Cir. 2006) (reasoning that in every decision the main factors contributing to the sentence must be identified by the sentencing court, but there is no "requirement for a lengthy or detailed recitation or one addressing every claim and counter-argument; rather, the reviewing court needs, and both parties deserve, a *specific* explanation and not just a reference to the evidence.").

Rivera is physically "healthy," with no significant physical impairments(PSR ¶¶162-163). He denied having any mental or emotional problems (PSR ¶165). Rivera does report using drugs, including cocaine and heroin, on a regular basis and expresses a willingness to participate in substance abuse treatment. (PSR ¶ 167-170). See U.S.S.G. §5H1.4 (policy statement) ("[d]rug or alcohol dependence or abuse is not a reason for a downward departure."). Rivera has graduated from high school (PSR ¶171), and claims to have supported himself over the years through legitimate employment. (PSR ¶¶ 179-180).

In short, the PSR reflects nothing unusual or extraordinary in Rivera's background to justify taking him outside of the heartland of cases already addressed by the Sentencing Guidelines. C.f., Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 2047 (1996) ("[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline"). Rivera chose to inject massive quantities of poison into the Greater Lowell community with the assistance of several underlings simply as a means to make money. The amount of pain, addiction, and crime that he has contributed to is incalculable. To reflect the seriousness of the offense, to promote respect for the law and provide just punishment, to afford adequate deterrence and to protect the public, nothing should

steer him outside the federal sentencing guideline range.  See United States v. Thurston, No. 05-2271 (1st Cir. July 26, 2006) (discussing Congressional goal of promoting national uniformity in sentencing).

**C. Sentence**

The government recommends a term of 97 months' imprisonment with 4 years' supervised release and a $70,000 fine.  The government's recommendation is reasonable, United States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc), and in accord with the overarching principles and policies expressed and incorporated in the Sentencing Guidelines.

```
                            RESPECTFULLY SUBMITTED
                            MICHAEL J. SULLIVAN
                            United States Attorney


                    By:    /s/ William F. Bloomer
                            WILLIAM BLOOMER
                            Assistant U.S. Attorney
                            BBO#553104
                            william.bloomer@usdoj.gov
                            (617) 748-3644
```

**CERTIFICATE OF SERVICE**

I, William F. Bloomer, hereby certify that this document filed through the ECF system on April 2, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

```
                            /s/William F. Bloomer
                            WILLIAM F. BLOOMER
```

Date: 2 April 2007